IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-CR-408-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ) | |
| ADAM RYAN CORNETT, ) | |
| ) | |
| Defendant. ) | |

This matter came before the court for sentencing and motion hearing on January 26, 2021. The court memorializes herein reasons for denying defendant's motion to withdraw guilty plea and for finding that Rachel Cornett, defendant's estranged wife, is not a "crime victim", as that term is defined in the Crime Victims' Rights Act, 18 U.S.C. § 3771, ("CVRA"). The court reiterates its grant of the government's motion for upward variance, albeit not to the full extent requested, for reasons stated herein and additionally at hearing.

A. Motion to Withdraw Guilty Plea

On January 13, 2021, defendant moved to withdraw his guilty plea, on grounds that it was not freely given based on full and complete information. "[A] defendant does not have an absolute right to withdraw a guilty plea, even before sentencing." United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant must "show a fair and just reason for requesting the withdrawal." To determine whether defendant has met this burden, the Fourth Circuit set forth the following six factors:

> 1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, 2) whether the defendant has credibly asserted his legal

innocence, 3) whether there has been a delay between the entering of the plea and the filing of the motion, 4) whether defendant has had close assistance of competent counsel, 5) whether withdrawal will cause prejudice to the government, and 6) whether it will inconvenience the court and waste judicial resources.

Moore, 931 F.2d at 248. "The consideration of these factors is not a rigidly mechanistic test, for the conspicuous fuzziness of the operative terms–fair and just–precludes such an endeavor. United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009). Nevertheless, the court must "balance these factors, along with any other pertinent information, to reach its decision." Id.

As to the first factor, a properly conducted Rule 11 proceeding raises a strong presumption that defendant's plea was knowing and voluntary. United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992). Although defendant states in conclusory fashion that his plea "was not freely given based on full and complete information", (DE 51 at 2), he has provided no credible reason to believe that his plea was not knowing and voluntary at the time it was made.[1] As such, this factor weighs in favor of denying the motion.

The second factor, whether defendant has credibly asserted his innocence, also supports denying the motion, as defendant has not even alleged that he innocent. The third factor, delay, cuts in favor of denying the motion. In Moore, the court found that six weeks was a long delay in moving to withdraw a guilty plea. 931 F.2d at 248. Here, defendant entered his plea on August 5, 2020, and moved to withdraw his plea on January 13, 2021, approximately five months later.

The fourth factor, inadequacy of counsel, is not persuasive. Although defense counsel

---

[1] To the extent defendant's claim is based on his lack of notice of the government's intent to introduce Rachel Cornett's statement at sentencing, the government is not required to provide such notice. See 18 U.S.C. § 3771 (containing no notice requirement); see also United States v. Dunham, 326 F. App'x 206, 207 (4th Cir. 2009) (holding that a prosecutor's failure to provide notice of victim's allocution at sentencing did not violate defendant's due process rights and finding that the "the prosecutor's conduct was neither improper nor constituted prosecutorial misconduct.").

moved to withdraw, on grounds that communication with defendant had deteriorated, the court denied the motion, finding that "[d]espite no fault of his counsel . . . the court anticipates defendant's anger and frustration has turned also towards his lawyer."  (Order (DE 53) at 1).

Turning to the fifth and sixth factors, the government and the court will experience scheduling difficulties if defendant is allowed to withdraw his guilty plea on the date of sentencing. In consideration of the above factors, defendant has not met his burden of showing a fair and just reason for withdrawal of his guilty plea, and therefore, defendant's motion is denied.

B.     Crime Victims' Rights Act

Under the CVRA, a crime victim has "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing."  18 U.S.C. § 3771(a)(4).  The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A).[2]

The United States Court of Appeals for the Fourth Circuit has not interpreted the definition of a "crime victim" under the CVRA.  However, it has construed identical language of the Victim and Witness Protection Act of 1982 ("VWPA") and the Mandatory Victims Restitution Act of 1986 ("MVRA"), and held that a person is "directly and proximately harmed" when the harm results "from conduct underlying an element of the offense of conviction."  United States v. Blake, 81 F.3d 498, 506 (4th Cir. 1996) (construing identical language of the VWPA); United States v. Davenport, 445 F.3d 366, 374 (4th Cir. 2006) abrogated on other grounds by Irizarry v.

---

[2]     Federal Rules of Criminal Procedure 32(i)(4)(B) and 60(a)(3) also provide a victim the right to be heard at sentencing, and Rule 60(b)(2) incorporates by reference the definition of a victim in the CVRA.

3

United States, 553 U.S. 708 (2008) ("A person is directly harmed, for purposes of the MVRA, when the harm results from conduct underlying an element of the offense of conviction.").

"The Fourth Circuit's interpretation of the "direct and proximate harm" language contained in [the MVRA and the VWPA] provides a helpful guide for interpreting the meaning of the nearly identical language contained in the CVRA." United States v. Sharp, 463 F. Supp. 2d 556, 562 (E.D. Va. 2006).[3] In Blake, Fourth Circuit addressed the meaning of "victim" under the VWPA, in a case where defendant stole purses and used the credit cards contained therein. 81 F.3d at 506. Defendant pleaded guilty to using stolen credit cards, in violation of 18 U.S.C. § 1029(a)(2). Id. The Fourth Circuit held that the individuals from whom defendant stole the credit cards were not "victims" under the VWPA because the essential elements of defendant's offense of conviction, fraudulent use of unauthorized access devices, did not include theft of the credit cards. Id. at 506-07. Thus, the individuals were not directly and proximately harmed by conduct underlying an element of the offense of conviction. Id.

Here, defendant pleaded guilty to making a false statement during purchase of a firearm and possession of a firearm by a prohibited person. The elements of making a false statement during purchase of a firearm are: "1) the defendant acquired or attempted to acquire a firearm from a federally-licensed firearms dealer; 2) that in so doing, the defendant knowingly made a false or fictitious statement, orally or in writing, or knowingly furnished or exhibited a false or fictitious identification intended or likely to deceive such dealer; 3) that the subject of a false statement or

---

[3] Other circuits have held that, in light of the similarity between the language of the CVRA and the VWPA, a "victim" under the VWPA is the same as a "crime victim" under the CVRA. See In re McNulty, 597 F.3d 344, 350 (6th Cir. 2010) ("[W]e find our case law construing the VWPA and the MVRA persuasive, both for how the CVRA is to be interpreted procedurally and for when an individual qualifies as a victim of a conspiracy."); In re Rendon Galvis, 564 F.3d 170, 173 (2d Cir. 2009) (determining that a claimant was not a victim under both the CVRA and VWPA by using the same analysis for both statutes).

4

identification was material to the lawfulness of the sale." United States v. Rahman, 83 F.3d 89, 92 (4th Cir. 1996).

Moreover, the elements of possession of a firearm by a prohibited person are as follows: 1) possession of a firearm or ammunition in or affecting commerce 2) by a person who is subject to a court order that—

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

United States v. Mahin, 668 F.3d 119, 122 (4th Cir. 2012).

Applying the Fourth Circuit's approach in Blake and Davenport to the instant matter, Rachel Cornett does not qualify as a "victim" under the CVRA for purposes of the first offense of conviction, because the specific conduct underlying the elements of making false statement during purchase of a firearm did not harm Rachel Cornett. Indeed, she was not present when the false statement were made, nor was she a party to the transactions involving the firearms.

The government argues the instant case is distinguishable from Blake, because here, "defendant's knowing and willful false statements in order to unlawfully purchase two firearms, while being prohibited because of his DVPO represent 'necessary step[s] in the accomplishment of his objective.'" (Mem. (DE 54) at 11). The government's argument misreads Blake. In Blake, the Fourth Circuit held that "Blake's theft of the credit cards represents a pattern of criminal

5

activity that was a necessary step in the accomplishment of his objective, *i.e.,* use of unauthorized access devices. But, the factual connection between his conduct and the offense of conviction is legally irrelevant for the purpose of restitution." Blake, 81 F.3d at 506 (emphasis added).

Defendant's second offense of conviction, possession of firearm by a prohibited person, presents a closer question, since defendant was in possession of the firearms when he arrived at Rachel Cornett's home on April 2, 2019. The Fourth Circuit's opinion in United States v. Crow, 256 F. App'x 595 (4th Cir. 2007) is instructive on this issue. In Crow, the Fourth Circuit considered whether an individual was a "victim" under the VWPA, in a case where the defendant pleaded guilty to possession of firearm by felon. 256 F. App'x at 596. The Fourth Circuit held that the individual, who was shot by defendant, was not a victim under the VWPA because use of the firearm to shoot the individual was not conduct underlying an element of the offense of conviction. Id. Under Crow, Rachel Cornett is not a "crime victim." Even if defendant's possession of the firearm exacerbated Rachel Cornett's fear of him on April 2, 2019, use of the firearm to intimidate is not conduct underlying the offense of conviction.[4]

Nevertheless, the government argues that Rachel Cornett is a crime victim because "[b]ut for the commission of the Defendant's federal crimes, a violation of his [domestic violence protective order] would not have occurred." (Mem. (DE 54) at 11). The government's argument is unpersuasive. Defendant violated his domestic violence protective order by being on Rachel Cornett's property, regardless of whether the firearms were in his truck. To be sure, if defendant's

---

[4] The government relies on United States v. McElroy, 353 F. App'x 193 (11th Cir. 2009) for the proposition that "status offenses" have victims. In McElroy, the Eleventh Circuit held that children depicted in pornographic images found on defendant's computers were victims of his offense of conviction—receiving child pornography. 353 F. App'x at 193. However, the connection between Rachel Cornett and defendant's crimes in the instant case is much more attenuated than the connection between the children and the offense of conviction in McElroy. Indeed, the instant case is more analogous to Crow than McElroy.

6

offense of conviction was violation of domestic violence protection order, Rachel Cornett would qualify as a crime victim. However, as even the government states in its brief, "a person may not assert victimhood status because a defendant could have or should have been charged with an additional or different crime." (Id. at 7).

Accordingly, because Rachel Cornett was not harmed by conduct underlying an element of the offenses of conviction, she is not a "crime victim" under the CVRA. Nevertheless, she may testify under oath as a witness at defendant's sentencing, since "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person" in determining a sentence. 18 U.S.C. § 3661; see also United States v. Myers, 402 F. App'x 844, 845 (4th Cir. 2010) (holding that statement made by defendant's ex-wife was relevant to defendant's background, character, and conduct, and was thus admissible for the purpose of imposing an appropriate sentence).

C.  Section 3553(a) Factors and Variance Sentence

It is incumbent upon the court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of 18 U.S.C. § 3553(a). Kimbrough v. United States, 552 U.S. 85, 111 (2007) (quoting § 3553(a)); United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). The court "must determine whether a sentence within that [guidelines] range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors." United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006). In this manner, "the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." Kimbrough, 552 U.S. at 113 (Scalia, J. Concurring).

In determining the particular sentence to be imposed under this standard, the court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a). In addition, the court must consider "the sentences legally available; [] the Sentencing Guidelines; [] Sentencing Commission policy statements; . . .and the need for restitution." United States v. Fowler, 948 F.3d 663, 668 (4th Cir. 2020).

Here, the court determined at sentencing that the advisory guidelines range does not serve the factors set forth in § 3553(a), and that an upward variance sentence is warranted by the unique circumstances of the instant case, for all the reasons the court expressed orally at sentencing. In so holding, the court granted the government's motion for an upward variance, finding that a sentence above the guidelines range, a term of 60 months, is sufficient, but not greater than necessary, to serve the § 3553(a) factors. Nevertheless, the court disagreed with the government that a variance to the full extent requested, up to a sentence of 84 months, would be reasonable under the circumstances.[5]

---

[5] Defendant received notice of the government's intent to seek an upward variance at hearing on January 7, 2021.

## CONCLUSION

In sum, for the reasons stated herein and orally at sentencing, the court found that Rachel Cornett is not a "crime victim" under the CVRA, DENIED defendant's motion to withdraw guilty plea (DE 51), and GRANTED IN PART the government's oral motion for an upward variance.

SO ORDERED, this the 27th day of January, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge